IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN C. BURNETT, | ) |
| Plaintiff, | ) ) ) |
| | ) No. CIV-17-392-M |
| v. | ) ) |
| MARY FALLIN, et al., | ) ) |
| Defendants. | ) |

REPORT AND RECOMMENDATION

On April 6, 2017, Plaintiff, a prisoner in the custody of the Oklahoma Department of Corrections who appears *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. United States District Judge Miles-LaGrange referred the matter to the undersigned United States Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). By Order entered April 13, 2017, Plaintiff was granted leave to proceed *in forma pauperis*, and on April 24, 2017, Plaintiff paid the required initial partial filing fee. For the following reasons, it is recommended that the cause of action be dismissed with prejudice pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b) on the basis of Defendants' sovereign immunity and without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

1

I. <u>Statutory Screening of Prisoner Complaints</u>

The court must screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Additionally, with any litigant, such as Plaintiff, who is proceeding *in forma pauperis*, the court has the duty to screen the complaint to determine its sufficiency. <u>See</u> 28 U.S.C. § 1915(e)(2). In this initial review, the court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

To survive this review, the plaintiff must plead "enough facts to state a claim that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). In applying this standard the court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. <u>See</u> <u>Leverington v. City of Colo. Springs</u>, 643 F.3d 719, 723 (10th Cir. 2011). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting <u>Twombly</u>, 550 U.S. at 556).

Although a *pro se* litigant's pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520 (1972), the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997). See Yang v. Archuleta, 525 F.3d 925, 927 n. 1 (10th Cir. 2008)(court reviewing *pro se* complaint does not "assume the role of advocate")(quotations and citation omitted). "[B]are assertions" consisting of "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009) (citing Twombly, 550 U.S. at 554–555). Further, a claim is frivolous "where it lacks an arguable basis either in law or in fact" or is "based on an indisputably meritless legal theory." Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989).

II. Section 1983 Claims Calling Into Doubt Conviction or Sentence

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Bruner v. Baker, 506 F.3d 1021, 1025-1026 (10th Cir. 2007)(quotation omitted).

In Plaintiff's Complaint, Plaintiff alleges that he has been confined in the

custody of the Oklahoma Department of Corrections since 1994, when he was convicted of first degree murder and sentenced to life imprisonment pursuant to a plea agreement. Plaintiff seeks monetary damages and declaratory and injunctive relief against Defendants. Plaintiff sues Oklahoma Governor Fallin, five members of the Oklahoma Pardon and Parole Board ("Parole Board"), and Ms. Denton, a Parole Investigator for the Parole Board. Plaintiff states that he is suing each of these seven Defendants in their individual and official capacities.

Plaintiff alleges in his first ground that Defendants "breach[ed]" his "plea agreement/contract" by denying his parole applications and by applying changes to parole statutes and procedures to him that were adopted after his conviction. Plaintiff's claim seeking compensatory damages from Defendants for an alleged breach of his plea agreement is foreclosed by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), unless and until Plaintiff's murder conviction and sentence are invalidated. Plaintiff has not demonstrated that his conviction or sentence has been invalidated. Thus, his claim seeking damages against Defendants under § 1983 for an alleged breach of his plea agreement should be dismissed without prejudice.

III. Eleventh Amendment Immunity

States, state officials named in their official capacities, and state agencies or entities considered "arms of the State" are entitled to immunity under the Eleventh

4

Amendment unless the State has waived its immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)(holding a State and its officials acting in their official capacities are not "persons" under the terms of 42 U.S.C. § 1983); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)(holding "the principle of sovereign immunity is a constitutional limitation on the federal judicial power," and that a State's sovereign immunity may be waived only by an unequivocal expression of waiver).

Although in some circumstances Congress may abrogate a State's sovereign immunity by legislation, 42 U.S.C. § 1983 does not abrogate the sovereign immunity of a State. See Quern v. Jordan, 440 U.S. 332, 345 (1979)(§ 1983 does not waive States' sovereign immunity). Moreover, Oklahoma has not consented to Plaintiff's suit against its state officials in their official capacities. See Ramirez v. Okla. Dep't of Mental Health, 41 F.3d 584, 589 (10th Cir. 1994)("Oklahoma has not waived sovereign immunity against § 1983 claims in federal district court.").

Thus, the Eleventh Amendment bars Plaintiff's § 1983 action seeking damages from Defendants in their official capacities, and these claims should be dismissed with prejudice. See Gillette v. New Mexico Parole Bd., 42 Fed. App'x 210, 211 (10th Cir. 2002)(unpublished op.)(members of a state parole board are

immune from § 1983 liability for actions taken in their official capacity)(citing <u>Knoll v. Webster</u>, 838 F.2d 450, 451 (10th Cir. 1988)).

"[A] suit for prospective relief against state officials named in their official capacities, based upon an ongoing violation of federal law, is not considered an action against the state within the meaning of the Eleventh Amendment." <u>Muscogee (Creek) Nation v. Okla. Tax Comm'n</u>, 611 F.3d 1222, 1234 (10th Cir. 2010). In his Complaint Plaintiff requests injunctive relief requiring Defendants to apply only "the law(s), policies and practices [that were] in effect at the time of his plea agreement, in the context of parole consideration or other forms of clemency per 28 U.S.C. 2202." Complaint, at 14. It appears that Plaintiff is seeking injunctive relief for a continuing violation of the Ex Post Facto Clause. Plaintiff's Ex Post Facto claim against Defendants in their official and individual capacities is addressed below.

IV. <u>Procedural and Substantive Due Process – Parole</u>

In ground one of the Complaint, Plaintiff alleges that Defendant Denton denied his procedural and substantive due process rights by conducting an inadequate investigation and unfairly recommending the denial of his parole based on erroneous information. Plaintiff alleges that Defendants who are Parole Board members unfairly denied his parole applications based on the erroneous and inadequate information in the parole investigator's report and due to Defendant

6

Fallin's actions which have "politicized the [parole] process in several ways." Complaint, at 7.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Petitioner's due process claims alleged in his Complaint action appear to assert a liberty interest in parole. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Id. (internal citations omitted). See Estate of DiMarco v. Wyo. Dep't of Corr., 473 F.3d 1334, 1339 (10th Cir. 2007)(quoting Wilkinson).

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). A state statute that "holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained," and this hope "is not protected by due process." Id. at 11. In Oklahoma, eligibility for parole is discretionary. See Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir. 1979)("[T]he Oklahoma statutory scheme . . . does no more than create a parole system, which in the Supreme Court's view . . . does not establish a

7

liberty interest."); Shabazz v. Keating, 977 P.2d 1089, 1093 (Okla. 1999)("[T]here is no protectable liberty interest in an Oklahoma parole."). Hence, no specific due process procedures are required prior to the denial of a state prisoner's application for parole in Oklahoma.

Plaintiff's § 1983 substantive and procedural due process claims are grounded in his assertion that he has a constitutionally-protected liberty interest in parole. He has no such interest. Thus, Plaintiff's allegations that the parole investigation report included improper or false information or that the Parole Board relied on allegedly improper or false information in denying his applications for parole fail to state a viable claim of a constitutional violation. See Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006)("A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered."); Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000)("[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectable property interest."); Griffith v. Bryant, 625 Fed. App'x 914, 917-18 (10th Cir. 2015)(unpublished op.)("Also, because Oklahoma's parole scheme is discretionary, [plaintiff] has no constitutionally protected due process liberty interest in parole.")(citing Shirley, 603 F.2d at 807, and

8

Shabazz, 977 P.2d at 1093); Abdulhaseeb v. Jenks, 2005 WL 1242174 (W.D.Okla. 2005)(petitioner's allegations that Oklahoma Pardon and Parole Board "relied on certain false information as well as certain protected and confidential information and that the Board failed to follow its own rules, regulations and procedures" failed to show deprivation of his right to procedural or substantive due process). Thus, these due process claims should be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted.

V. Ex Post Facto Application of Changes in Parole Statutes and Procedures

Plaintiff contends in his first and second grounds for relief under 42 U.S.C. §1983 that Defendants have violated guarantees under the United States Constitution's Ex Post Facto Clause by applying changes to Oklahoma's parole system adopted after his sentencing in determining his eligibility for parole and parole procedures.

The Ex Post Facto Clause prohibits states from enacting laws that retroactively alter the definition of crimes or increase the punishment for criminal acts. See U.S. Const. art. 1, § 10. The Ex Post Facto Clause "extend[s] . . . to agency regulations that are legislative in nature." Boutwell v. Keating, 399 F.3d 1203, 1215 (10th Cir. 2005). "[T]he controlling inquiry" in evaluating Plaintiff's Ex Post Facto

claim "is not whether the law is retroactive, but 'whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Henderson v. Scott, 260 F.3d 1213, 1216 (10th Cir. 2001)(quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)). When an amendment or change in laws or regulations governing parole "creates only 'the most speculative and attenuated possibility' of increasing the measure of punishment, it is 'insufficient under any threshold' to violate the Ex Post Facto Clause." Id. (quoting Morales, 514 U.S. at 509).

The only substantive change in Oklahoma law regarding parole identified by Plaintiff is the very change addressed by the court in Henderson. In that decision, the Tenth Circuit Court of Appeals addressed a prisoner's claim that Oklahoma's amended statute, Okla. Stat. tit. 57, § 332.7(D)(1), effective in 1998, providing that a prisoner convicted of a violent crime and initially denied parole would not be reconsidered for parole for three years, violated the Ex Post Facto Clause on its face and as applied to him. Just as Plaintiff has asserted herein, the prisoner in Henderson argued that the statutory scheme effective when he committed his crimes entitled him to annual reconsideration for parole.

The court in Henderson held that Oklahoma's amended parole statute does not facially increase the likelihood of punishment because "it does not change the

claim "is not whether the law is retroactive, but 'whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Henderson v. Scott, 260 F.3d 1213, 1216 (10th Cir. 2001)(quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)). When an amendment or change in laws or regulations governing parole "creates only 'the most speculative and attenuated possibility' of increasing the measure of punishment, it is 'insufficient under any threshold' to violate the Ex Post Facto Clause." Id. (quoting Morales, 514 U.S. at 509).

The only substantive change in Oklahoma law regarding parole identified by Plaintiff is the very change addressed by the court in Henderson. In that decision, the Tenth Circuit Court of Appeals addressed a prisoner's claim that Oklahoma's amended statute, Okla. Stat. tit. 57, § 332.7(D)(1), effective in 1998, providing that a prisoner convicted of a violent crime and initially denied parole would not be reconsidered for parole for three years, violated the Ex Post Facto Clause on its face and as applied to him. Just as Plaintiff has asserted herein, the prisoner in Henderson argued that the statutory scheme effective when he committed his crimes entitled him to annual reconsideration for parole.

The court in Henderson held that Oklahoma's amended parole statute does not facially increase the likelihood of punishment because "it does not change the

length of the [litigant's] sentence in any way," "it does not affect the timing of the initial parole consideration, only of subsequent parole consideration dates," and it "reserves the [Parole] Board's discretion to reconsider parole before the three-year period has expired." Id. at 1216-17.

Further, with respect to the prisoner's as-applied challenge, the court held that the prisoner had "not shown that his circumstances have changed sufficiently in light of his convictions and sentences to warrant an earlier parole consideration date" and therefore it was only "remote speculation" to indicate that application of the amended statute to him would increase his punishment. Id. at 1217. Thus, the court held that Oklahoma's parole statute does not violate the Ex Post Facto Clause.

In his Complaint, Plaintiff recognizes that Henderson forecloses a facial challenge to the statute governing parole reconsideration timing. Petitioner contends, however, that he has shown "several detrimental changes in the relevant state law(s) regarding parole and clemency, changes in policies and practices, changes in the Governor(s) and members of the Pardon and Parole Board and associated changes in political factors" that demonstrate a violation of Ex Post Facto guarantees in the application of the statutory scheme to him.

In support of his Ex Post Facto claim, Plaintiff conjectures, without benefit of any evidence, that the makeup of the Parole Board has changed to a more law-

11

enforcement-oriented makeup, that parole consideration is no longer based on an inmate's behavior while incarcerated, and that various statements of Defendant Governor Fallin show a politically-motivated desire to prevent violent offenders like Plaintiff to be paroled. In the absence of any evidence of statutory or policy changes effecting any substantive change in the statutory or regulatory scheme, Plaintiff has not demonstrated that any of these conjectural changes would result in a significant risk of a longer period of incarceration for Plaintiff. See Iqbal, 566 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiff has also failed to assert a plausible claim that other allegedly "detrimental changes" in Parole Board policies, including (1) his inability to personally appear before the Parole Board, (2) his alleged inability to transfer to a minimum security facility, (3) the allowance of "protests" by crime victims or their representatives in connection with parole proceedings, (4) the "active role" of a prosecutor in parole proceedings, and the (5) "elimination of [Department of Corrections'] record keeping of inmates' accomplishments" would result in a significant risk of a longer period of incarceration for Plaintiff.

Plaintiff further alleges that at the time he entered his plea "there were no requirements or restrictions on those being considered for parole," and now there are

"many such requirements and restrictions, such as having to prove a home and job upon release, education requirements, and so forth." Complaint, at 9. Plaintiff has provided no evidence to support this allegation. However, even assuming its truth, Plaintiff has not demonstrated that, considering his murder conviction and life sentence, "his circumstances have changed sufficiently . . . to warrant an earlier parole consideration date." Henderson, 260 F.3d at 1217. Further, Plaintiff cannot establish an ongoing violation of federal law, and he is not entitled to injunctive relief.

Accordingly, Plaintiff has failed to state a plausible claim of a violation of Ex Post Facto guarantees against Defendants in their individual or official capacities, and this claim should be dismissed without prejudice pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b).

VI. Cruel and Unusual Punishment

Plaintiff alleges in his third ground for relief that "Defendants imposed cruel and unusual punishment on the Plaintiff, in violation of the 8th Amendment." Complaint, at 12. The gist of this claim is that the denial of his parole applications has detrimentally effected his mental health.

A "prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S.

825, 828 (1994). Although an Eighth Amendment deprivation may be based on the conditions of confinement in a prison, "[t]he Constitution does not mandate comfortable prisons, . . ., and only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991)(internal quotations and citations omitted). See Farmer, 511 U.S. at 834 (to state Eighth Amendment claim for denying inmate humane conditions of confinement "[f]irst, the deprivation alleged must be, objectively, 'sufficiently serious'")(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

Plaintiff's allegations in count three fail to state an Eighth Amendment claim because the only condition of confinement he has alleged is that the Oklahoma prison system is overcrowded. Complaint, at 10. As the Supreme Court cautioned in Wilson, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson, 501 U.S. at 305. Rather, conditions of confinement may establish an Eighth Amendment violation only "when they have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth, or exercise . . . ." Id. at 304-305.

Plaintiff has not identified any specific conditions from which to infer that he

is being exposed to a significant risk of harm to his health or safety. Nor has Plaintiff set forth a plausible claim of deliberate indifference by any Defendant to a significant risk of harm to his health or safety. Accordingly, Plaintiff's Eighth Amendment claim in ground three of the Complaint should be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a viable claim of a constitutional violation.

VII. <u>Supplemental State Tort Claim</u>

Plaintiff alleges that Defendants are liable to him for damages for intentional infliction of emotional distress. Because Plaintiff's claims are either barred by sovereign immunity or by <u>Heck</u>, or subject to dismissal for failure to state a plausible claim for relief under 42 U.S.C. § 1983, they should be dismissed and the Court should decline to exercise supplemental jurisdiction over any state-law tort or state constitutional claims asserted by Plaintiff. <u>See</u> 28 U.S.C. §§ 1331, 1332, 1367(c)(3); <u>Smith v. City of Enid ex rel. Enid City Comm'n</u>, 149 F.3d 1151, 1156 (10th Cir. 1998)(recognizing "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims").

RECOMMENDATION

Based on the foregoing findings, it is recommended that Plaintiff's 42 U.S.C.

§ 1983 action against Defendants in their official capacities be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) on the ground of sovereign immunity. It is further recommended that Plaintiff's cause of action against Defendants in their individual capacities and, with respect to Plaintiff's claim for prospective equitable relief in their official capacities, be dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) for failure to state a claim upon which relief may be granted. It is further recommended that the dismissal count as a "prior occasion" or "strike" pursuant to 28 U.S.C. § 1915(g). Finally, it is recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state tort claim.

Plaintiff is advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by __May 24th__, 2017, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991); <u>cf.</u> <u>Marshall v. Chater</u>, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not

specifically addressed herein is denied.

ENTERED this   4th   day of   May  , 2017.

*[signature: Gary M. Purcell]*

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE